Isaac S. Whitten, plaintiff in error, vs. Burchet Jenkins, by her next friend, Stephen Jenkins, defendant in error.

[1.] Mrs. J. sued W. in equity, to recover a negro, which W. had purchased from her husband, without notice, as he alleged, of her eqitable title: *Held*, that parol evidence of facts which appeared on a previous trial between the husband and one L., who had become the agent of W., was admissible to prove notice of her equitable title.

Whitten vs. Jenkins.

[2.] A separate estate may be created by parol, and without a trustee. If there be no trustee appointed, the husband will take the legal interest in the wife's separate estate; but equity will treat him as a trustee for his wife.

[3.] Notice to an agent, of a fact connected with the subject matter of his agency, is notice to his principal.

In equity. In Hancock Superior Court. Tried before Judge Wm. M. Reese. April Term, 1865.

Burchet Jenkins, wife of Charles Jenkins, by her next friend, Stephen Jenkins, filed her bill against Isaac S. Whitten, returnable to Hancock Superior Court, April Term, 1854. It sought the recovery of a negro girl named Margianna, as the separate property of Mrs. Jenkins, together with hire from January 11th, 1853.

The bill and answer made two questions:—1st. Whether Mrs. Jenkins took a separate estate in the negro by gift from Samuel M. Devereux; and 2d. Whether, if she did, the defendant, Whitten, purchased from Charles Jenkins, her husband, with notice of her title.

At the trial, complainant introduced the following testimony:

*Martha Ann Jackson.*—" I know the negro girl Margianna ' was in the possession of Burchet Jenkins, the year that Samuel M. Devereux died—think it was 1847 or 1848. I heard Devereux say to Burchet, 'I give you the negro girl Margianna, and you must keep her, and let nobody take her from you until I call for her; and after ninety-nine years I will call for her, and you must then give her up.' I am certain that it was the year previous to the death of Devereaux, at the residence of Burchet Jenkins, at Farmer's Academy, in this county. I never knew the girl to belong to Charles Jenkins. At the time Devereux gave the girl, he called upon John G. Rains and Witham Youngblood, in my presence, to take notice that he gave to aunt Burchet Jenkins, Margianna, for ninety-nine years, and to nobody else."

*John G. Raines.*—" I knew the negro girl Margianna, in the possession of Burchet Jenkins some two years. I heard

Samuel M. Devereux make a deed of gift to Mrs. Burchet Jenkins, and was called on by him to witness the fact.   He said he gave her to Mrs. Jenkins for ninety-nine years, or her life-time, if forever: Mrs. Jenkins was his aunt, and his intention was fully expressed to give her the girl for her own use, at Farmville Academy, I think in December 1838, and Witham Youngblood, Miss Martha Reynolds, and the family—".

Defendant's counsel objected to that part of this evidence, beginning with " and his intention," and ending with " for her own use ;" but the Court overruled the objection.

*James Thomas.*—Was counsel for Charles Jenkins in this Court, when D. W. Lewis, administrator of S. M. Devereux, attempted to sell the negro girl in dispute, and when a claim was interposed by Charles Jenkins, as trustee for his wife. The claim was dismissed by his motion, because he did not think that was the proper way to try the issue, as between the equitable title of Mrs. Jenkins and D. W. Lewis, administrator.   Thinks there was some testimony in Court. Was also counsel for Mrs. Jenkins in the second case, between Charles Jenkins and David W. Lewis, administrator, in the action of trover.   His recollection is very clear—cannot be mistaken about it—that in that case the equitable title of Mrs. Jenkins was insisted on, and set up; that Charles Jenkins was only asserting his legal title against the defendant, Lewis, as administrator, for the protection of his wife's equitable title.   There was evidence submitted. Belives Mrs. Jackson was then sworn, and the judgment of the Court was in conformity with the claim of Mrs. Burchet Jenkins, the Court deciding the legal title to be in Charles Jenkins, and the equitable title in his wife.   The testimony of Mrs. Jackson and of Raines was the same on that trial as at the present one.

(Counsel for defendant objected to the testimony of this witness, as to what took place on both trials, and, especially, to that part of his testimony which sought.to explain the nature of the case of Charles Jenkins vs. D. W. Lewis,

administrator, and to show the nature of the judgment rendered—they all being matters of record. The Court overruled the objection, and permitted the witness to testify; but received his evidence for the sole purpose of charging Whitten with notice of Mrs. Jenkins' equitable title, and it was only so used in the trial.)

*David W. Lewis.*—After the trial of the case of Charles Jenkins against witness, as administrator, defendant purchased the girl in dispute from Charles Jenkins. Witness acted as agent for Whitten (defendant) in the purchase, and paid the money to Jenkins for Whitten. The amount was six hundred dollars, which was a fair valuation at the time. The parties traded through him, and were some time about it Witness told defendant that it was safe to buy the girl; that the Court decided that she was Charles Jenkins' property. Witness told Whitten all that happened on the trial, as well as he now recollects. His recollection does not agree with Mr. Thomas, as to what occurred on the two trials referred to. The claim on the first trial was dismissed because the evidence did not support the gift as a separate estate. Mrs. Jackson and Mr. Raines were both sworn, and they did not, to the best of his recollection, testify to any separate estate. On the second trial, the equitable title of Mrs. Jenkins was set up, and the same proof, Mrs. Jackson and Mr. Raines, offered. Charles Jenkins succeeded in the case, and the judgment of the Court was in favor of his own title. When he told Whitten of what took place, this is what he told him, and that Jenkins' title was good. He is sure he communicated to Whitten what did take place on the trial. The purchase by Whitten was completed just as the suit was ended; and negotiations for the purchase, through witness, had begun, and been carried on before the trial ended.

The defendant introduced, in evidence, the records of the two cases referred to by the witnesses.

The first was a claim interposed by Charles Jenkins, as trustee of his wife, in March, 1849, and dismissed at October term, 1850.

The second was an action of trover, brought by Charles Jenkins, individually, his wife not being mentioned in it, returnable to April term, 1851; judgment for plaintiff at April term, 1852; appeal by defendant, and appeal dismissed at April term, 1860.

The Court charged the jury as follows:

" Gentlemen of the jury : In this case it is necessary that you should first determine what estate in the negro girl was given by Samuel Devereux to Mrs. Burchet Jenkins, wife of Charles Jenkins.   If Devereux gave this girl to Mrs. Jenkins, by words excluding the right of the husband to control and enjoy the same; by words declaring the negro girl was given for her use, and no other person—for her use alone—then you will find she had a separate or sole estate in the girl.   If you do not believe that such words were used by Devereux as would give a separate or sole estate, as above explained, then you will proceed no further in this case, but find for defendant with costs of suit.

" After determining this point, if you are satisfied, from the evidence, that a separate estate was given to Mrs. Jenkins, and no one named as her trustee, I charge you that the law made Charles Jenkins, her husband, her trustee, and placed the legal title to the negro in him; that is, she would have the right to use and enjoy and control the slave, and he the nominal ownership or legal title.   There may be two interests in the same slave—one the equitable interest, the other the legal interest.   The nominal ownership, the legal title, would give Charles Jenkins, if the same was' in him, the right to sue for and recover the slave in a court of law.

" It appers from the record of a case before you, between said Charles Jenkins and David W. Lewis, administrator, admitted by both parties to be correct, that Charles Jenkins did actually, in a court of law, sue for and recover said slave. In relation to this record, I charge you that there is nothing in the same conclusive against the equitable right and claim of Mrs. Jenkins to said slave.   It does show a *prima facie*

title or right to said negro in Charles Jenkins; and yet, the suit there recorded may have been commenced and carried through on a nominal title as trustee of his wife. If Charles Jenkins, after recovering said slave, at or about the time of such recovery, sold said slave to defendant, Whitten, and, in the purchase, Whitten bought, *bona fide*, paid his money, and had no notice of Mrs. Jenkins' claim or equitable interest, if any she had, then Whitten's title is good, and should not be disturbed. Did Whitten have such notice? You must decide this question from the testimony before you. If he had notice of Mrs. Jenkins' claim to the property, and, by mistake of himself or agent as to its validity, honestly believed the claim not to be good, then he can not claim as a purchaser without notice. Notice to the agent of Whitten in the purchase of the slave would have been notice to himself. If you believe, from the testimony, that David W. Lewis acted as agent of Whitten in the purchase of the negro in controversy, and that he was notified of the claim of Mrs. Jenkins, then Whitten can not defend as a *bona fide* purchaser without notice.

"In response to certain allegations in the bill of complainant, charging him with notice of Mrs. Jenkins' claim, Whitten denies notice of any such claim. Therefore, to establish notice in the case, of this claim of Mrs. Jenkins,' if his agent were not notified as above described, complainant must show notice by one witness and corroborating circumstances, or by two witnesses, as it will require that amount of proof to overcome the oath of Whitten on the point of notice. As to the merits of the testimony in the case, either establishing or rebutting notice, you alone can judge. In determining which shall be preferred, you should examine the position and interest of the different witnesses, and from them and such other as may be proper in the case, say what testimony is most reliable. If you believe, from all the facts as placed before you, and the law as given in charge by me now, that Whitten did not have such notice as above described, either to himself or his agent, then you should find

for the defendant, with costs of suit. If you believe he had such notice as I have explained to you, and that to himself or his agent, then you should find for the plaintiff; and you may find the highest proven value of the slave in controversy, in this particular, with interest and cost of suit."

The jury found for the complainant; and the defendant thereupon brought his bill of exceptions, alleging that the Court erred as follows:

1. In admitting that part of the evidence of Raines objected to, to-wit: "And his intention was fully expressed to give her the girl for her own use."

2. In permitting James Thomas to testify as to the ction of the Court in the two cases referred to in his testimony, the relation in which the parties sued and defended, and the judgment rendered.

3. In charging the jury generally; and, specifically, that if Devereux gave the negro girl to Mrs. Jenkins, by words excluding the right of the husband to control and enjoy the same, declaring the negro girl was given for her use and no other person—for her use alone,—then you will find she had a separate or sole estate in the negro girl.

4. In not charging the jury the law of the case, that the words used by the witness did not pass a separate estate.

5. In charging that the record was not conclusive against the plaintiff; that it only showed a *prima facie* title in Charles Jenkins; and that the suit may have been commenced and carried on on a nominal title.

6. In charging that if Lewis was the agent and had notice of the claim of Mrs. Jenkins, this was notice to Whitten, and Whitten can not claim as a purchaser without notice.

POTTLE, for plaintiff in error.

L. STEPHENS, for defendant.

WALKER, J.

The first question made in this case, is, whether the Court

erred in admitting the following testimony of John G. Raines, viz.: "And his intention was fully expressed to give her the girl for her own use." If this were the only evidence in the cause, on the subject, perhaps we might be disposed to reject it; but as the same fact was sufficiently established by other testimony, we are unwilling, for this, to send the case back. It may be well questioned, however, whether this is an expression of opinion, or the statement of a fact.

[1.] The second complaint was the admission of Judge Thomas' testimony, as to the action of the Court in two cases mentioned, the relation in which the parties sued, &c. The Judge certifies that this evidence was received "for the sole purpose of charging Whitten with notice of Mrs. Jenkins' equitable title, and it was only so used on the trial." For this purpose, we think the testimony clearly admissable. It was important for Mrs. Jenkins to prove notice to Whitten of her equitable title, and this evidence tended to show such notice, to Lewis at least, who was the agent of Whitten in purchasing the negro from the husband; and the Court, therefore, did not err in admitting the testimony for this purpose. We do not say that this was the only purpose for which it was admissable in this case; but it is unnecessary to decide more than that it was properly admitted to charge Whitten with notice.

[2.] The third allegation of error, is to the charge of the Court, in relation to Devereux giving the negro to Mrs. Jenkins, by words excluding the right of the husband, &c. The specific complaint, as we understand it, is to the use of the word "alone" in that charge,—that there is no evidence to sustain the charge. It is true, the word "alone" is not used by either of the witnesses, but there are other words used which are equivalent thereto. We think the charge, as given, contains the law applicable to the facts of the case, and there was evidence to sustain the whole of it; and, therefore, the Court was right, both in giving the charge, and also in refusing to charge that the words used by the witnesses

did not pass a separate estate. We think it clear, by the evidence in this case, that the donor intended to create in Mrs. Jenkins a separate estate. He said to her, "I give you the negro girl Margianna, and you must keep her, and let *nobody* take her from you until *I* call for her; and after ninety-nine years, I will call for her, and *you* must give her up." Again, "At the time Devereux gave the girl, he called upon John G. Raines and Witham Youngblood, in my presence, to take notice that he gave aunt Burchet Jenkins Margianna for ninety-nine years, and *to nobody else.*"

We see no error in the charge of the Court, as set out in the fifth ground of error. There was no antagonism, in the case of Charles Jenkins vs. Lewis, between the titles of Mrs. Jenkins and her husband. A recovey in that case by her husband, was for her benefit. Here was an action to recover a negro, which was her separate property : she had no trustee. "In that case, the husband will take the legal interest, but equity will treat him as a trustee for his wife." *Fears vs. Brooks,* 12 *Ga. R.,* 197, and cases cited. "The legal interest" was in the husband, and this, at law, must prevail; but surely the assertion of this "legal interest," against a mere wrong doer, can not be held to *conclude* the *wife* from showing, in a Court of Equity, *her equitable title.* We think the case of Fears vs. Brooks, *supra,* an authority for the charge as given, in relation to "carrying on a case on nominal title."

[3.] We think there was no error in the Judge charging that notice to Lewis was notice to Whitten. There is no question that Lewis was the agent of Whitten, in purchasing the negro. He negotiated the trade for Whitten; and we are very much disposed to think there was sufficient evidence to charge Whitten with actual notice of the claim of Mrs. Jenkins; but whether there is or not, there was no doubt about Lewis, his agent, having notice of her claim, at the time of purchase and for several years prior thereto; at least, from the time Charles Jenkins claimed the property, "as trustee of his wife, Burchet Jenkins," on the 30th of March, 1849. "Notice of facts to an agent, is constructive notice thereof

39

to the pricipal himself, when it arises from, or is at the time connected with, the subject matter of his agency; for, upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal; and if he has not, still, the principal having entrusted the agent with the particular business, the other party has a right to deem his acts and knowledge obligatory upon the principal." These are all the errors complained of, and we think none of them sufficient to entitle the party to a new trial.

Judgment affirmed.